UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FAIRFIELD-SUISUN UNIFIED
SCHOOL DISTRICT,

                                NO. CIV. S-11-2796 LKK/GGH

        Plaintiff,

   v.                                    <u>O R D E R</u>

STATE OF CALIFORNIA
DEPARTMENT OF EDUCATION,
and DOES 1-25, inclusive,

        Defendants.
_____/

       Plaintiff Fairfield-Suisun Unified School District ("District") brings this action against Defendant California Department of Education ("CDE"), pursuant to the Individuals with Disabilities Education Act ("IDEA"), and seeking: (1) declaratory relief to determine the District's rights and duties regarding compliance complaint review procedures; and (2) injunctive relief requiring the CDE to "set aside its corrective actions against the District."

       Presently before the court is Defendant CDE's motion to

dismiss Plaintiff's complaint. Def's Mot., ECF No. 18. For the reasons provided below, the court grants Defendant's motion.

## I. BACKGROUND

**A. Statutory Framework of the Individuals with Disabilities Education Act ("IDEA")**

The statutes and regulations addressing the provision of education for disabled students are somewhat convoluted and, as I explain below, requires a searching examination of what remedies are available to which parties. I turn to that question after outlining the relevant authorities.

In 1975, Congress appropriated federal funds for state special education programs and made them available on the condition that states implement policies assuring a "free appropriate public education," sometimes referred to as a "FAPE," for all children with disabilities. <u>Porter v. Board of Trustees of Manhattan Beach Unified School Dist.</u>, 307 F.3d 1064, 1066 (9th Cir. 2002) (citing 20 U.S.C. § 1412(a) (establishing right to a free appropriate public education); <u>id.</u> § 1400(c) (congressional findings)). Known then as the Education of All Handicapped Children Act ("EHA"), re-named the Individuals with Disabilities Education Act ("IDEA"), and amended on July 1, 2005, the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA Amendments"), Pub.L. No. 108-446, 118 Stat. 2647 (2004), "confers upon disabled students an enforceable substantive right to public education in participating States, and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act."

2

See Porter, 307 F.3d at 1066 (citing Honig v. Doe, 484 U.S. 305, 310, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); Bd. of Educ. v. Rowley, 458 U.S. 176, 188-89, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (holding that the EHA established a right to public education for students with disabilities that "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction")).

Among the most important of the IDEA's goals is the protection of the "parents' right to be involved in the development of their child's educational plan." Id. (citing Amanda v. Clark County Sch. Dist., 267 F.3d 877, 882 (9th Cir. 2001)). Toward this end, participating states are required to establish procedures giving parents "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." Id. (citing 20 U.S.C. § 1415(b)(6)).

After making their complaint, parents are entitled to "an impartial due process hearing." Id. (citing 20 U.S.C. § 1415(f)). A decision of the due process hearing "shall be final," id. (citing 20 U.S.C. § 1415(i)(1)(A)), except that "[a]ny party aggrieved by the findings and decision ... shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United

States." Id. (citing 20 U.S.C. § 1415(i)(2)(A)). These procedures, including the available appeal, must be explained to parents in writing upon the filing of an administrative complaint. Id. (citing 20 U.S.C. § 1415(d)).

California adopted legislation to comply with IDEA's due process hearing requirements. See Cal. Educ. Code §§ 56500-56507. Under state law, a parent may initiate a due process hearing regarding the provision of a free appropriate public education for a child and that hearing will be conducted "at the state level." See Cal. Educ. Code § 56501(a), (b)(4)). The decision of the hearing officer "shall be the final administrative determination and binding on all parties" unless a party "exercis[es] the right to appeal the decision to a court of competent jurisdiction ... within 90 days of receipt of the hearing decision." See Cal. Educ. Code § 56505(g), (i)).

Unfortunately, the relatively straight forward process noted above has been complicated by regulations adopted by the U.S. Department of Education. That department promulgated regulations pursuant to its general rule making authority which requires each recipient of federal funds, including funds provided through the IDEA, to put in place a complaint resolution procedure ("CRP"). See 34 C.F.R. §§ 300.660-300.662; Lucht v. Molalla River Sch. Dist., 225 F.3d 1023, 1029 (9th Cir. 2000). The regulations require each state education agency to adopt written procedures for resolving any complaint regarding the education of a child with a disability. See 34 C.F.R. § 300.660(a). The regulations permit

4

a complaint to be filed with both the CRP and the IDEA due process hearing system, in which case the CRP must await the due process hearing's resolution of overlapping issues, which is then binding in the CRP. See 34 C.F.R. § 300.661(c).

To comply with the U.S. Department of Education's regulations regarding the establishment of a CRP, California established a uniform system of complaint processing for specified programs or activities which receive state or federal funding. 5 Cal. Code Regs. § 4610(a). These regulations authorize the state Superintendent of Public Instruction to investigate and attempt to resolve any complaint alleging a violation of the IDEA. Id. at § 4650(a)(viii)(B). Upon determination that a local agency is in violation of federal or state law, "the Superintendent shall notify the local agency of the action he or she will take to effect compliance," and "may use any means authorized by law to effect compliance," including withholding fiscal support and proceeding in a court of competent jurisdiction for an appropriate order compelling compliance. Id. at § 4670.

**B. Factual Allegations**[1]

Plaintiff alleges that on November 12, 2009, the parents of a District special needs student submitted a request for a compliance complaint investigation to CDE.

////

---

[1] These allegations appear in the Plaintiffs' Complaint, ECF No. 1, unless otherwise specified. The allegations are taken as true for purposes of this motion only. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

5

On or about January 8, 2010, CDE issued a Compliance Complaint Report which the District received on January 13, 2010. The Report was authored by Anita Salvo, an agent and/or employee of CDE. According to the complaint the report was "filled with factual errors and disregarded the one-year statute of limitations applicable to compliance complaints under Federal law."

On or about January 21, 2010, less than ten days after the District received the report, Ms. Salvo contacted the Non-Public Agency ("NPA") with which the District had contracted to provide Student's NPA behavior intervention services and, without the knowledge or consent of the District, directed the NPA to immediately begin the provision of services to the student at the District's expense.

On February 1, 2010, the District submitted a request for reconsideration of the Report, pursuant to Section 4665 of Title 5 of the California Code of Regulations. The District's reconsideration request challenged the actions and directive set forth in the January 2010 Report and the actions taken by Ms. Salvo after the Report was issued.

On or about March 11, 2010, in a written communication of that date, CDE "acknowledged that the evidence submitted by the District in its request for reconsideration was sufficient to warrant a reconsideration of the Report authored by Ms. Salvo." Id. at 4.

On April 22, 2010, CDE issued its Reconsideration Report. That report found that the District had not provided the Student with 68.5 hours of behavior supervision services during the

1  applicable period, but that, based upon the evidence submitted by
2  the District, the District had provided 70.25 hours of compensatory
3  behavior supervision services. It also provided that no further
4  corrective actions were warranted and Case # S-0307-09/10 was then
5  closed by the CDE.
6      On May 24, 2010, the parents of the Student submitted a
7  request to CDE that the reconsideration report be reconsidered a
8  second time.
9      On May 28, 2010, CDE responded to the parents' request for a
10 second reconsideration, using a CDE form letter for responses for
11 reconsideration requests. In the response, CDE informed the parents
12 that their reconsideration request was denied because "[t]here is
13 no statutory provision for reconsideration of a report that has
14 already been reconsidered."
15     On July 12, 2010, Fred Balcom, Director of CDE's Special
16 Education division, wrote to the parents, notifying them that the
17 April 2010 Report would remain final and further asserting that
18 CDE was unable to re-open the matter for a second reconsideration
19 because "we have no provision to continually reconsider our
20 findings."
21     Despite notifying the parents on May 28, 2010 and again on
22 July 12, 2010 that a second reconsideration was not possible under
23 the law, the CDE conducted a second reconsideration, and did so
24 without any notice to the District.
25     On February 18, 2011, almost a year after the April 2010
26 Reconsideration Report, CDE issued a second reconsideration report

7

1  ("Second Reconsideration Report").  CDE's Second Reconsideration
2  Report ordered the District to provide two forms of compensatory
3  services for the period before November 2009--the exact same period
4  covered by the April 2010 Reconsideration Report.
5       On March 3, 2011, two weeks after the Second Reconsideration
6  Report, the District requested in writing that CDE withdraw its
7  Second Reconsideration Report based on the lack of statutory
8  authority to conduct a second reconsideration or issue a second
9  reconsideration report, and the violation of the District's right
10 to an expedited resolution of issues.
11      On July 25, 2011, almost five months later, the District
12 received a letter from CDE, signed by Fred Balcom, refusing to
13 withdraw the Second Reconsideration Report.
14      The District alleges here  that "[t]hese actions of CDE and
15 their employees and agents are contrary to their own previous
16 statements and the law" and that "[c]ombined with the refusal to
17 withdraw the Second Reconsideration Report, these actions clearly
18 indicate that conduct in excess of any statutory authority is and
19 will be continuing in nature."  Plaintiff District further alleges
20 that "other similar actions by Anita Salvo on behalf of CDE, and
21 ratified by Fred Balcom on behalf of CDE, are in excess of any
22 statutory authority or jurisdiction of CDE, and that acts
23 substantially similar to those alleged . . . are not isolated acts
24 but are systemic and pervasive."
25      Plaintiff seeks declaratory relief to determine the District's
26 rights and duties regarding compliance complaint review procedures

8

and injunctive relief requiring the CDE to "set aside its corrective actions against the District."

**C. Defendant CDE's Motion to Dismiss**

On March 7, 2012, Defendant CDE filed the motion to dismiss Plaintiff's action, which is presently before the court. In support of Defendant's motion, James Johnson, an administrator with the Special Education Division of the CDE, submitted a declaration asserting that on October 28, 2012, he sent a letter to Plaintiff District and the parent of the student involved in the compliance investigation. The attached letter states, <u>inter</u> <u>alia</u>:

> Because District behavior supervision service hours were not identified in the original complaint investigation dated January 8, 2010, compliance case S-0307-09/10 is limited to the compensatory non-public agency (NPA) behavioral intervention service hours. Therefore, the additional District behavioral supervision service hours required by the reconsideration dated February 18, 2011, will not be enforced by the CDE.
>
> In accordance with the required corrective actions, identified in the April 22, 2010[] reconsideration report, the District submitted copies of NPA invoices confirming completion of compensatory NPA behavioral intervention service hours provided to the student between August 2009 and the end of March 2010.
>
> Therefore, compliance case S-0307-09/10, including the April 22, 2010, and February 18, 2011, reconsiderations, is now closed.

Defendant argues that: (1) Plaintiff's complaint is moot; (2) there is no private right of action under the IDEA against the CDE stemming from the compliance complaint report; and (3) Plaintiff has failed to exhaust its administrative remedies.

**II.  Private Right of Action**

Before considering any other issue, the court must address defendant's contention that plaintiff has no right to sue under the circumstances. Where a claim is founded on a statute, it is not enough for a plaintiff to satisfy the constitutional standing requirements of Article III; the court must also consider whether a particular plaintiff has been granted a right to sue by the statute under which the suit is brought. Lake Washington School Dist. No. 414 v. Office of Superintendent of Public Instruction, 634 F.3d 1065, 1067 (9th Cir. 2011) (citing City of Sausalito v. O'Neill, 386 F.3d 1186, 1199 (9th Cir. 2004)).

The issue presented here is whether a local educational agency (LEA), as opposed to children with disabilities and their parents, has a right under the IDEA to challenge a CRP determination in federal court.

The CRP and the due process hearing procedure are alternative or serial means of addressing a complaint brought under § 1415(b)(6) of the IDEA. Lucht v. Molalla River School Dist., 225 F.3d 1023, 1028 (9th Cir. 2000).[2] "Although different, a CRP is no less a proceeding under § 1415 than is a due process hearing," id. at 1029, and a parent is not required to exhaust California's CRP in addition to exhausting its due process procedures before bringing suit in federal court, Porter v. Board of Trustees of Manhattan Beach Unified School Dist., 307 F.3d 1064, 1073 (9th Cir.

---

[2] The parents proceeded under the CPR regulation only.

2002).

A court within this district determined that *students and parents* have a private right of action to sue the California Department of Education in federal court under the state's CRP. See <u>S.A. v. Tulare County Office of Education</u>, No. 08-cv-1215 LJO GSA, 2009 WL 30298, at *7-8 (E.D. Cal. Jan. 6, 2009) ((citing <u>Christopher S. v. Stanislaus County Office of Ed.</u>, 384 F.3d 1205 (9th Cir. 2004) (in which the Ninth Circuit heard three students' appeal from a CRP, but did not explicitly consider whether the IDEA allows federal court review of a CRP determination); <u>Beth V. v. Carroll</u>, 87 F.3d 80, 88 (3rd Cir. 1996) (holding that a plaintiff enjoys an express right of action under the pre-amendment language of the IDEA for a state's failure to implement the CRP itself)). On the other hand, two courts in the Northern District determined that students and parents may *not* seek judicial review of CRP determinations under the IDEA.  See <u>Pedraza v. Alameda Unified School Dist.</u>, No. 05-cv-04977 CW, 2011 WL 4507111, at *6-8 (N.D. Cal. Sept. 29, 2011) (citing <u>Virginia Office of Protection and Advocacy v. Virginia, Dep't of Educ.</u>, 262 F.Supp.2d 648, 660 (E.D. Va. 2003)); <u>R.K. ex rel. T.K. v. Hayward Unified School Dist.</u>, No. 06-cv-07836 JSW, 2007 WL 4169111, at *1-3 (N.D. Cal. 2007) (finding <u>Beth V.</u> unpersuasive because the IDEA statutory provision upon which the decision was based "now [post-amendments] limits the right to bring a civil action to parties aggrieved by the findings and decisions made in the due process hearing or by the placement

////

11

in an alternative educational setting")).[3]

Although these district court decisions offer guidance on the rights of students or parents to judicial review of CRP determinations, they do not address the distinct question of whether an LEA, specifically, may challenge a CRP determination in federal court. The Ninth Circuit's opinion in Lake Washington School Dist. No. 414 v. Office of Superintendent of Public Instruction, 634 F.3d 1065 (9th Cir. 2011), is instructive on that question.

In Lake Washington, the Ninth Circuit held that "a school district or other local educational agency has no express or implied private right of civil action under the IDEA to litigate any question aside from the issues raised in the complaint filed by the parents on behalf of their child" and that, when a school district "seeks to enforce for its own ends the procedural protections intended to safeguard the rights of disabled children and their parents," that school district "lack[s] statutory standing to seek enforcement of IDEA's procedural protections." Id. at 1069. "[A] CRP is no less a proceeding under § 1415 than is a due process hearing," Lucht, 225 F.3d at 1029, and an LEA lacks statutory standing to enforce the procedural safeguards of

---

[3] Defendant CDE suggests that this court should conclude that under the IDEA, determinations made by the CDE in a complaint review process ("CRP") are unappealable, regardless of the party initiating the suit. The court need not, and thus does not, reach the question of whether students and parents have a private right of action to challenge the process or outcome of California's CRP proceedings under the IDEA.

§ 1415. It thus appears that an LEA also lacks statutory standing to challenge a state agency's enforcement of its CRP.[4]

Like the plaintiffs in <u>Lake Washington</u>, Plaintiff Fairfield-Suisun Unified School District's instant action for declaratory and injunctive relief is not related to the issues raised in the parents' request for a compliance complaint investigation or their request for reconsideration and, therefore, Plaintiff's action does not concern the review of administrative decisions directly involving a disabled child's right to FAPE. Instead, Plaintiff challenges the CDE's "systemic and pervasive" issuance of second reconsideration reports. Because an LEA has no express or implied private right of civil action under the IDEA to litigate any question aside from the issues raised in the complaint filed by parents on behalf of their child, Fairfield-Suisun lacks statutory standing to bring this suit.[5]

### III. CONCLUSION

For the reasons provided above, Defendant's motion to dismiss, ECF No. 18, is GRANTED. Plaintiff's complaint is

---

[4] At first blush it is somewhat disconcerting to believe that an LEA has no ability to challenge a state agency's adverse decision affecting its duties. On the other hand, since the state provides the LEA with its funds, it does not appear to violate straightforward notions of due process that the state's final administrative decision is not susceptible to court review.

[5] In any event it would appear that the district's complaint is moot, given the result of the Department of Education's decision. The court need not, and thus does not, resolve the question of whether the Department's process is one which must nevertheless be resolved due to the likelihood that the Department's process will be repeated but its duration will avoid judicial review.

13

1  DISMISSED WITH PREJUDICE.
2      IT IS SO ORDERED.
3      DATED: June 27, 2012.
4
5
6                              /s/ Lawrence K. Karlton
                               LAWRENCE K. KARLTON
7                              SENIOR JUDGE
                               UNITED STATES DISTRICT COURT
8

14